COMMONWEALTH *vs.* CHARLES F. COOPER.

Middlesex.    March 4, 1969. — May 29, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Identification. Evidence, Of* identity. *Constitutional Law,* Assistance of counsel. *Practice, Criminal,* Assistance of counsel, Suppression of evidence, Rules of court.

At the trial of an indictment for armed robbery at the outset of which the defendant's counsel, who had not filed any motion to suppress pursuant to Rule 101B of the Rules of the Superior Court (1954), stated that he would "bring up" a motion "to exclude testimony" "in the course of the trial," there was no error on the record in the judge's declining to receive such a motion during direct examination of a victim, or in the denial of such a motion at the conclusion of the victim's testimony. [78, 80]
*United States* v. *Wade*, 388 U. S. 218, discussed. [81–83]

Where it appeared at the trial of an indictment for armed robbery that on the sixteenth day after the crime the defendant was arrested in a foreign State for another crime and was brought to a police station in Massachusetts, and the victims of the robbery then identified him as the robber among a group of men "milling around" in a room there while he was without counsel and a suspect but not an accused in the robbery case, it was held that, under the Sixth Amendment of the Constitution of the United States as expounded in *United States* v. *Wade*, 388 U. S. 218, the defendant should have been informed before he was observed and confronted by the victims at the police station that such activity was going to take place and that he was entitled to have counsel present thereat; it was without consequence that prior to the observation and confrontation actually made the defendant had been advised of his constitutional rights under the rules of *Miranda* v. *Arizona*, 384 U. S. 436. [83]

Where it appeared at the trial of an indictment for armed robbery, at which the victims identified the defendant as the robber, that the judge's conduct of the trial indicated that he understood and applied the principles set forth in *United States* v. *Wade*, 388 U. S. 218, and permitted wide cross-examination of the victims and actively participated in questions to them as to their observations at the time of the robbery, that the evidence indicated that the victims then had ample opportunity to observe the robber and capacity to remember what they observed, and that a victim had identified the defendant as the robber from one photograph out of many shown the day after the robbery, it was held that it was clear beyond a reasonable doubt that the victims' in-court identification was based on observations of the defendant at the time of the robbery and not on an unconstitutional observation and confrontation by them of the defendant at a police station sixteen days after the robbery, and there was no error in permitting the in-court identification to stand. [84–85]

INDICTMENT found and returned in the Superior Court on April 5, 1968.

The case was heard by *Kalus*, J.

*John C. Cratsley*, of Washington, D. C., for the defendant.

*Paul A. D'Agostino*, Assistant District Attorney (*Ruth I. Abrams*, Assistant District Attorney, with him), for the Commonwealth.

KIRK, J. The defendant Cooper waived his right to trial by jury and was found guilty by the judge on an indictment charging him with armed robbery. The trial was subject to G. L. c. 278, §§ 33A–33G.

Cooper's appeal is before us with a summary of the record, a transcript of the evidence and eight assignments of error,

only three of which purport to be based upon exceptions.[1] These three assignments rest on the single contention that eyewitness testimony identifying Cooper as one of the robbers was inadmissible under *United States* v. *Wade,* 388 U. S. 218, *Gilbert* v. *California,* 388 U. S. 263, and *Stovall* v. *Denno,* 388 U. S. 293.

A proper consideration of the main contention dictates that we first summarize the pertinent evidence; second, state and discuss certain procedural steps preceding and attending the trial; and third, resolve the central issue.

1. We summarize the evidence.[2] On the evening of March 4, 1968, Maurice Jacobson was working in his pharmacy on Rindge Avenue, North Cambridge. His wife was helping him. About 10:25 P.M. while Jacobson was sweeping up, preparing to close the store, two men entered. The store was reasonably well lighted. The taller of the two men approached within three or four feet of Jacobson and asked for a bottle of cough medicine. Jacobson directed him to his wife at the drug counter at the rear of the store. The two men started to go to the rear of the store, but instead went to the card rack near the door where they stopped. Soon thereafter, as Jacobson's sweeping brought him within a few feet of the tall man,[3] the latter turned around, opened his coat and revealed a gun at his belt. The gun looked like a German Luger. Cooper said, "[T]his is a holdup. . . . [J]ust go down back of the store and no one will get hurt, and take it easy."

The other man then held a gun to Jacobson's back and took him to the rear of the store near the drug counter. Jacobson was given a paper bag and told to fill it up. Cooper was pointing the gun at Mrs. Jacobson. Jacobson put money

---

[1] "It is settled that an assignment of error under G. L. c. 278, §§ 33A–33G, brings nothing to this court unless based on a valid exception. *Commonwealth* v. *Gray,* 314 Mass. 96, 102, and cases cited." *Commonwealth* v. *Chapman,* 345 Mass. 251, 255–256.

[2] The defendant's brief misstates the evidence in significant particulars. It recites as evidence in the case before us matter which is not to be found in the transcript or elsewhere in the record, but which was of importance in cases adjudicated elsewhere and relied upon by the defendant in his brief.

[3] Identified at the trial by both Jacobsons as Cooper.

into the bag from both cash registers. Mrs. Jacobson at the counter was within two feet of Cooper and she looked at his face as he leaned on the counter with his elbow and pointed the gun at her while Jacobson was filling the bag. When the bag was filled Jacobson told the men that the police would be coming along in a few minutes to help close up the store. The two men grabbed the bag and ran out.

Jacobson did not notice the color of Cooper's hair too much "because the other characteristics stood out . . . [s]uch as a pock-marked face and pulled-in cheeks. Sallow." Mrs. Jacobson "observed his face, and I couldn't forget it. . . . his cheeks are in a little . . . [a]nd he was soft spoken. . . . I remember his face. I remember the shape of his face."

The next day Jacobson went to the police station to look at photographs in an attempt to identify the participants in the robbery. He looked through five or six boxes of photographs without identifying anyone. Then "[a] detective came in and threw a manila envelope with a picture in the front of it on the table and I [Jacobson] just looked at it and . . . said: that is the man — without any hesitation at all."

On March 20, 1968, Cooper was arrested in Chicago, Illinois, by officers of the Cambridge police on a warrant for a crime other than the crime charged in the present case. At the time of his arrest he was advised of his rights under the *Miranda* rules (*Miranda* v. *Arizona*, 384 U. S. 436). He was brought to Boston on the same day. On the plane ride from Chicago he was similarly warned of his rights. On the way from the Boston airport to the police station one of the officers stopped off to purchase shaving cream and razor blades for Cooper who had left his personal effects in a Chicago rooming house. When he reached the Cambridge police station he was again advised of his rights. He made a telephone call to a girl. He did not ask for a lawyer.

While Cooper was at the police station on March 20, 1968, the Jacobsons had been asked to report to the station house. First Jacobson and later Mrs. Jacobson was taken to a room and asked to look through a "one-way" glass or window to

an adjoining room to determine if they could pick out anyone there who had participated in the robbery. There were twelve to twenty men "in all manners of dress," "milling around" in the room. Some of the men were police officers. Jacobson picked out Cooper. Mrs. Jacobson immediately picked out Cooper. After Jacobson had picked out Cooper he requested the police to have Cooper walk alone in front of him because "I just wanted to see him closer and see him walk around just to be 100% sure that that was the man." This was done in the presence of both Jacobsons.

2. We state and discuss certain procedural aspects of the case. On April 5, 1968, Cooper was indicted for the Jacobson robbery. At his arraignment on April 10, he was represented by counsel and pleaded not guilty. Several motions thereafter were filed on his behalf. At Cooper's request the case was continued for trial until June 14, 1968, when he filed his waiver of right to trial by jury. At the opening of the trial his counsel presented certain motions not theretofore filed. Referring to one of these motions, counsel said to the judge, "The motion to exclude testimony I will bring up in the course of the trial. I previously intended to have a hearing before the trial, but I am not going to do that." The motion was returned to counsel.

During the Commonwealth's examination of Jacobson he was asked if either of the two men who had entered the store was in the court room. Cooper's counsel objected "on the grounds of the case of *United States* vs. *Wade.* I have a written motion here which I would like to file." The judge declined to receive the motion, advising counsel that "as the evidence goes in you may object to it. Right now, there is no question of any lineup. . . . I will hear you later if you wish to have it stricken." The defendant's exception was saved.

There was no error in the judge's ruling. Nothing in the record gave the judge the slightest intimation that a special issue was to be made of identification or that a voir dire would be requested. Cooper's counsel had failed to comply with Rule 101B, adopted April 30, 1965, effective June 1,

1965, in amendment of the Rules of the Superior Court (1954).[4] In addition at the trial he made no effort to show that he was within the flexible provisions of the second paragraph of the rule. As appears from the colloquy between the judge and counsel at the outset of the trial, counsel sought to reserve to himself the prerogative to decide whether or when he would have a hearing on his motion to exclude identification evidence. This he may not do. Rules of court are indispensable to the orderly and efficient conduct of a court's business. They are not to be set aside and the order of trial affected or dictated by the caprice or design of counsel. Currently, Rule 101B is of special importance in arranging for and expediting the trial of criminal cases especially where constitutional issues are to be raised. A motion to suppress or exclude evidence of identification because of alleged failure to meet constitutional requirements comes clearly within the scope of Rule 101B. The last minute waiver of right to jury trial did not dispense with the rule. The defendant cannot now be heard to complain of a procedure which was his deliberate choice. See *Commonwealth* v. *Lewis*, 346 Mass. 373, 379.

In his cross-examination of Jacobson the defendant was not restricted. Jacobson's opportunities to observe Cooper and the details of his observation at the time of the robbery were fully developed.[5] The fact that Cooper had been

---

[4] Rule 101B (Applicable to Criminal Cases) reads as follows:
"Motions for Return of Property
and to Suppress Evidence

"Motions for the return of property and motions to suppress evidence shall be in writing, shall specifically set forth the facts upon which the motions are based and shall be verified by affidavit unless the facts are apparent upon the record and files.

"Such motions shall be filed within ten days after a plea of not guilty, or within such further time in advance of trial as the Court may order, unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion but the Court in its discretion may entertain such motions at any time or at the trial.

"The Court need not hear any motion which does not comply with this Rule."

[5] Jacobson testified for example about Cooper's accent. "It sounded like one of these phony southern accents." Q. "Sounded like what?" A. "You know, a phony southern accent. Like you-all. . . . Like a put-on accent, rather than a true southern accent. . . ." Q. "How do you distinguish be-

viewed by the Jacobsons on March 20, 1968, at the police station, was also elicited in the cross-examination of Jacobson. The observations on both occasions are stated in our summary of the evidence. At the conclusion of Jacobson's testimony, Cooper moved for the "exclusion of the testimony of . . . [Jacobson] on the basis of the fact that we have established that there was a confrontation at the police station." Subject to exception, the motion was denied. This was not error for the obvious reason that, when made, it was premature under the judge's ruling and was based on inadequate grounds.

3. At the close of the Commonwealth's case following the testimony of Mrs. Jacobson and two police officers,[6] Cooper moved that a hearing be held on his "motion to exclude the testimony of Mr. Jacobson and the testimony of Mrs. Jacobson . . . [o]n the basis of the case of *United States* vs. *Wade.*" We infer that this motion was made in reliance upon the judge's earlier statement that he would hear the defendant later if he wished to have the testimony struck. The defendant was not entitled to have the motion heard as of right. He does not argue and indeed on this record cannot argue that the information of the station house observation and confrontation was a surprise development at the trial. Accordingly, we deal with the merits of the motion on the premise that the defendant disregarded the provisions of Rule 101B, that the judge nevertheless consented to consider the issue of identification under *United States* v. *Wade,* 388 U. S. 218, in the event that the evidence elicited during the trial warranted it, that he did so consider the issue, and thereupon denied the motion, subject to exception.

The *Wade, Gilbert* and *Stovall* cases were briefly discussed recently by this court in *Commonwealth* v. *Bumpus,* 354 Mass.

---

tween a southern accent and a phony southern accent?" A. "Well, in the drug business you are more or less, you pick out who is a phony and who isn't, waiting on people and seeing many people a day there for 20 years, you more or less pick out the good from the bad, the phonies, it is just a way of analyzing a person, I guess. Being in the business, picking out certain characteristics. That's all."

[6] The officers testified that Cooper did not ask for a lawyer and did not have a lawyer at the time he was in the room to be observed by the Jacobsons.

494, where the factual situation was somewhat different from the one before us.[7]  See *United States* v. *Davis*, 399 F. 2d 948, 952 (2d Cir.), cert. den. 393 U. S. 987, citing *Commonwealth* v. *Bumpus*, 354 Mass. 494.  We refer to the *Wade* case again only to point up the question of its applicability to the present case.  The *Wade* case (p. 237) concerned a post-indictment lineup of six or seven prisoners, including Wade, conducted by the prosecution without notice to and in the absence of his counsel who had been appointed fifteen days before.  The Supreme Court held that the "post-indictment lineup was a critical stage of the prosecution at which . . . [Wade] was 'as much entitled to . . . [the] aid [of counsel] . . . as at the trial itself.'"  In the present case Cooper, within a few hours of his arrest in another State for a crime other than the one now charged, after he had been advised of his right to counsel under the *Miranda* case and had used the telephone, and before any complaint or indictment was made against him, was picked out by the Jacobsons from a group of twelve to twenty persons "milling around" in a room.

If we were to apply the precise holding of the *Wade* case to the facts of the case before us we should have some difficulty in concluding that the exhibition to and confrontation of Cooper by the Jacobsons, when Cooper was in custody and without counsel, was improper.  His status was that of a person in custody for a crime who was also a suspect but not the accused of an unrelated crime committed sixteen days before.  The metes and bounds of the *Wade* decision, however, are not readily ascertainable.  In addition to the holding, there is in the *Wade* opinion, as there is in many of the Supreme Court's opinions, far ranging discussion which it refers to as its "teaching" (see e.g. *Foster* v. *California*, 394 U. S. 440, 442–443 fn. 2).  The court treats at length with the possibilities of "unfairness" in "critical confrontations . . . at pretrial proceedings where the results might

[7] In the *Bumpus* case, the police responded within ten minutes of the time of the crime.  Bumpus was arrested within twenty minutes thereafter and immediately confronted by the victim.

well settle the accused's fate and reduce the trial itself to a mere formality." In the "teaching," words of specificity such as "post-indictment lineup" are dropped and are superseded by general phrases: "*any* pretrial confrontation" (emphasis not supplied), "any stage of the prosecution," "the Sixth Amendment guarantee to apply to 'critical' stages of the proceedings," "at such critical confrontations, as at the trial itself." The "teaching" includes an open-end statement of "principle" at the conclusion to part II of the Court's opinion at page 227.[8]

We make these observations: The requirement for the aid of counsel in the *Wade* case rests on a different constitutional provision from the requirement for the aid of counsel in the *Miranda* case. Under the *Miranda* case an in-custody interrogation before indictment invokes the Sixth Amendment right to counsel to safeguard the Fifth Amendment privilege against self-incrimination. See *Commonwealth* v. *McKenna*, 355 Mass. 313, 323–324. A confrontation by witnesses, however, does not involve self-incrimination.[9] Under the *Wade* case, then, a pre-trial confrontation by a prospective prosecution witness invokes the Sixth Amendment right to counsel to make effective at trial the other Sixth Amendment right "to be confronted with the witnesses against him." Or, stated otherwise, because of the potential for prejudice at a pretrial lineup, there is a critical need for counsel at that stage to "assure a meaningful confrontation at trial," 388 U. S. 218, 236. In the recent case of *Foster* v. *California*, 394 U. S. 440, the Supreme Court referred to the *Wade* case

---

[8] "In sum, the principle of *Powell* v. *Alabama*, [287 U. S. 45] and succeeding cases requires that we scrutinize *any* pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself. It calls upon us to analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice."

[9] "We have no doubt that compelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the accused to give evidence having testimonial significance. It is compulsion of the accused to exhibit his physical characteristics, not compulsion to disclose any knowledge he might have." *United States* v. *Wade*, 388 U. S. 218, 222.

as holding "that because of the possibility of unfairness to the accused in the way a lineup is conducted, a lineup is a 'critical stage' in the prosecution, at which the accused must be given the opportunity to be represented by counsel." Once the right to counsel arises in connection with an identification procedure the person in custody must specifically and seasonably be informed of that right before the procedure commences. As under the *Miranda* rule, the right to counsel may be waived, provided it is intelligently and understandingly done.

There are, as already noted, points of distinction between the *Wade* situation and Cooper's situation when he was exhibited with others at the station house. Cooper was in custody on another charge; he was a suspect but not yet accused of the Jacobson robbery. The in-custody observation and confrontation, however, although not a "critical stage of the *prosecution*" (emphasis supplied), was a *pretrial* confrontation. Most important, it was at a "critical stage" in that it was determinative whether there would be a prosecution. There are likewise distinctions between Cooper's situation and the situation in the *Bumpus* case, 354 Mass. 494. In the *Bumpus* case there was the element of urgency which arose from the speedy apprehension of a suspect in the vicinity where the crime took place. Prompt field confrontation of the suspect by the victim was sensible and advantageous to the suspect as well as to the authorities. The Cooper situation, in contrast, on March 20 was static. The prime suspect was no longer at large. There was time to inform Cooper of the pending confrontation and of his right to have counsel present just as there was time to notify the Jacobsons to report to the police station. Our conclusion is that, before the observation and confrontation by the Jacobsons took place, Cooper was entitled to be informed of that prospect and of his right to have counsel present. The earlier warnings to Cooper under the *Miranda* case did not encompass the information contemplated under the *Wade* case.

It is to be noted that Cooper does not attribute any un-

fairness to the procedure resulting in his identification among the men "milling around" in the room at the station house. He relies solely on the fact that he was without counsel when it took place.

The determination that out-of-court identifications are affected by constitutional error does not, as matter of law, however, preclude the same witnesses from making valid in-court identifications. The Commonwealth may establish "by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification." *United States* v. *Wade*, 388 U. S. at 240. The test to be applied is "'[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt 221 (1959)." *United States* v. *Wade*, 388 U. S. at 241, quoting *Wong Sun* v. *United States*, 371 U. S. 471, 488. Factors to be considered include: "the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification." *United States* v. *Wade*, 388 U. S. at 241.

The judge who heard the case was familiar with the *Wade* case. He so informed counsel. His conduct of the trial shows that he understood it and applied it. He not only permitted a wide range of cross-examination of the Jacobsons to determine their opportunity to observe Cooper at the time of the crime, but he actively participated in the questioning of the Jacobsons about their observations and ability to observe at the time of the robbery. The testimony revealed that both Jacobsons had more than adequate opportunity to observe the criminals and had ample capacity to remember what they observed. Further, when shown

five or six boxes of photographs the day after the crime Jacobson did not pick out anyone as Cooper. When shown another photograph with a folder he identified it without hesitation as Cooper. There was no confusion of identity prior to the observation at the station house; there was no failure to identify Cooper at any time. On this evidence we are convinced beyond a reasonable doubt (see *Chapman* v. *California*, 386 U. S. 18, 24) that the Jacobsons' in-court identifications were based not on the confrontation at the police station, but rather on observations of the accused at the time of the robbery. There was no error in permitting the in-court identification to stand.

The disregard of Superior Court Rule 101B deprives Cooper of any standing to complain of a denial of a "separate hearing" following a jury waived trial. Despite his disregard of the rule he was granted every opportunity to present evidence on any aspect of the case.

There was no error.

*Judgment affirmed.*