COMMONWEALTH *vs.* ROBERT PRESTON.

Essex. March 1, 1971. — April 21, 1971.

Present: TAURO, C.J., SPALDING, SPIEGEL, REARDON, & BRAUCHER, JJ.

*Practice, Criminal,* Exculpatory evidence, Assistance of counsel. *Identification. Error,* Whether error harmful.

There was no error in a criminal case in the denial of a motion of the defendant, based on mere speculation, that the Commonwealth furnish him with all evidence of an exculpatory or favorable nature. [370–371]
The record in a criminal case showed evidence sufficient to support a finding by the trial judge that the defendant was advised of his rights under *Miranda* v. *Arizona,* 384 U. S. 436, by police before he made inculpatory statements to them. [371–372]
Where it appeared at the trial of indictments for armed robbery and other serious crimes that before being placed in a lineup the defendant was given the warnings required by *Miranda* v. *Arizona,* 384 U. S. 436, and was told he had a right to have an attorney present, that the defendant stated explicitly that he wished to waive such right, that at the trial the victim and a confederate of the defendant, who had not been present at the lineup, identified him as a participant in the crimes, and that the defendant testified that he had been a participant, it was held that it was clear beyond a reasonable doubt that any error in the admission of testimony regarding identification of the defendant at the lineup, by reason of a failure to make it clear to him prior thereto that if he could not afford an attorney one would be appointed for him, was harmless. [372–374]

INDICTMENTS found and returned in the Superior Court on January 9, 1969, and September 18, 1969.

The cases were tried before *Sullivan,* J.

*Chester C. Paris* (*Gerald M. Lewis* with him) for the defendant.

*Peter F. Brady,* Assistant District Attorney, for the Commonwealth.

TAURO, C.J. This is an appeal by the defendant Robert

Preston under G. L. c. 278, §§ 33A–33G, from sentences imposed upon verdicts of guilty on two indictments for armed robbery, two indictments for mayhem, one indictment for assault and battery by means of a dangerous weapon, one indictment for assault to rape, one indictment for assault to murder, and one indictment for malicious damage to personal property. The cases of two codefendants, Emanuel Smith and Ralph C. Hamm, were disposed of prior to trial.

Before the trial a hearing was held on the defendant's motion to dismiss. The court made a finding of fact that the defendant was advised of his rights before being interrogated by the police and before being placed in a lineup.

At the trial Emanuel Smith, an inmate at State prison as a result of pleading guilty to indictments arising out of the same incident, testified that he was with Ralph Hamm and the defendant on the evening of November 22, 1968, and that all three went to a wooded area in Lawrence, Massachusetts. There, upon seeing a motor vehicle, the defendant opened the door and the lights went on inside. The defendant entered the car and had a scuffle with the male victim. Smith knifed him, yanked him out of the car, and he and Hamm beat him to unconsciousness. Smith then saw the defendant getting out of the car and saw a girl in the back seat. The defendant took the girl out of the car while she was unconscious. Hamm stomped her, and picked up a stick from the ground and shoved it into her vagina. They stole the girl's pocketbook and set the car on fire.

The male victim, in court, identified the defendant as the man who entered the car with a knife and attacked him. He stated that he could see the defendant as four lights went on in the car when the door opened. He also testified that he saw both the defendant and Smith in a police lineup in New York.

The girl also made an in-court identification of the defendant as the first man who entered the car. He had a knife. The defendant knocked her unconscious and her

next recollection was of Hamm taking her into the back seat. She stated that the lights were on in the car and she saw the defendant well enough to identify him. She did not go to New York for the lineup. She had earlier picked the pictures of the defendant, Hamm and Smith out of a large number of photographs.

While Lieutenant Tylus of the Lawrence police was on the witness stand a voir dire was held in order to determine whether the defendant was informed of his rights before interrogation. The judge ruled that an oral statement made by the defendant to the police in New York was admissible. The statement was to the effect that the defendant had taken part in the incident along with Smith and Hamm; that he and Smith had knives and beat the male victim unconscious; that Hamm was in the car with the girl for about twenty minutes and Hamm pushed the stick between her legs, and when he could not push it any further, he kicked it up the rest of the way.

The defendant took the stand and said that he opened the car door as a practical joke. He had no knife, but Smith had one. He admitted hitting the girl and taking her from the back seat. He did not see Hamm do anything to the girl while she was on the ground.

1. The defendant contends that there was error in the denial of his pre-trial motion that the Commonwealth be directed "to furnish the defendant with all evidence which is of an exculpatory nature or which may be favorable to the accused which is within the possession, custody and control of or within the knowledge of the prosecuting officer during the pendency of all matters relating to this Indictment."[1]   The trial judge denied the motion on the

[1] The motion further states, "Such evidence includes but is not limited to (1) any evidence that can be used for the purpose of impeaching the credibility of witnesses whom the Commonwealth intends to rely upon in support of the matters referred to in this Indictment; (2) statements which would reasonably tend to show that the accused did not commit the offense charged; (3) evidence which would reasonably tend to show that the accused did not commit the offense charged; (4) statements which are inconsistent with statements made by parties other than the declarant; (5) inconsistent statements made by a declarant to law enforcement officers; (6) prior inconsistent statements from those testified to during the course of the trial."

grounds that it was vague and incomprehensible.

The defendant does not claim that the prosecution withheld any evidence favorable to him, but does contend that the denial of the motion relieved the prosecution of its obligation to seek out any such evidence, whether or not it exists. The defendant admits that denial of the motion does not require reversal but suggests that the case be remanded for determination as to whether or not the prosecution did have such evidence. The cases relied upon by the defendant do not support his contention. In *Brady* v. *Maryland*, 373 U. S. 83, 87, the Supreme Court held that suppression by the prosecution of evidence favorable to an accused, when requested, violates due process if the evidence is material either on the question of guilt or punishment, irrespective of the good faith or bad faith of the prosecution. In the *Brady* case, the prosecutor withheld a statement which might have reduced the defendant's offence to less than murder in the first degree. The statement did not come to the defendant's notice until after he had been sentenced and his conviction affirmed on appeal. See *Giles* v. *Maryland*, 386 U. S. 66; *Williams* v. *Dutton*, 400 F. 2d 797 (5th Cir.). In the present case the defendant is merely speculating as to the existence of exculpatory evidence. The motion indicates that the defendant intended a fishing expedition. Moreover, some of the information sought by the defendant's motion would require the Commonwealth to make a determination as to whether one statement may or may not have been inconsistent with another statement. Such a burden could not be imposed on the Commonwealth. It is difficult to see any prejudice in the denial of the defendant's motion. The defence attorney had in his possession a copy of the transcript of a prior trial of Hamm which included evidence similar to that presented at the defendant's trial. Furthermore, the defendant took the stand and admitted his participation in the incident. The Commonwealth states that it is unaware of any evidence favorable to the accused.

2. The defendant claims that it was error to admit in-

culpatory statements made to the police because the *Miranda* v. *Arizona*, 384 U. S. 436, warnings were not given. In particular, the defendant claims he was not warned that he had a right to consult with a lawyer and have a lawyer present during interrogation. The trial judge found that the defendant was advised of his rights by the police. The finding was based upon testimony by Lieutenant Tylus of the Lawrence police department that the warnings were given. Tylus testified at a pre-trial hearing that immediately upon apprehending the defendant and Smith in New York he informed both as required by the *Miranda* case. He further testified that on arriving at a New York police station, the New York police warned them of their *Miranda* rights and showed them a card. Tylus's testimony was similar at a voir dire during the trial, except that he also stated that he gave a second *Miranda* warning at the New York police station and Officer Lannon of the Lawrence police showed a *Miranda* card which the defendant and Smith read.[2]

We believe that on this record there is sufficient evidence to support the trial judge's finding that the *Miranda* requirements were met. See *Commonwealth* v. *Scott*, 355 Mass. 471, 478–479. See also *Commonwealth* v. *Rawlins*, 352 Mass. 293.

3. The defendant claims error in the admission of testimony regarding his identification at the police lineup.

---

[2] Lieutenant Tylus stated at the voir dire that "the first thing as soon as they came out of the guard room, I told them they didn't have to say anything, that anything they do say would be used against them, they had a right to an attorney and if they couldn't afford an attorney, one would be provided. I asked if they understood these rights. They said yes. This was the second time I informed them of their rights. Officer Lannon was with me. He gave them the card, Miranda card, and showed it to them, and they read that." He also stated that they said they understood the card. We recognize that Tylus's recitation at the trial of the *Miranda* warnings omitted stating that the defendant had the right to have a lawyer with him during interrogation. See *Miranda* v. *Arizona*, 384 U. S. 436, 471. However, in light of all the evidence, including Tylus's testimony that the defendant was shown *Miranda* cards by both the New York and Massachusetts police, we believe that the trial judge could find that proper *Miranda* warnings were given. However, the record would have been clearer if the *Miranda* cards had been introduced as evidence. This is a practice which should be followed. See *Commonwealth* v. *Scott*, 355 Mass. 471, 478–479.

At the pre-trial hearing on this issue, Lieutenant Tylus testified that the defendant and Smith were informed that before being placed in the lineup they had a right to a lawyer and that "[b]oth of them stated that they wished to waive the right, to have an attorney present when they were placed in the lineup." Tylus further testified that a New York officer gave them the same warning and that the defendant had also been given *Miranda* warnings shortly before. The trial judge found that the defendant was properly advised of his rights by the police before the lineup took place. The defendant contends that the police should have informed him that if he could not afford an attorney, one would be appointed for him prior to his being placed in the lineup.

In *United States* v. *Wade,* 388 U. S. 218, 237, the Supreme Court held that the presence of defendant's counsel was a requirement for the conduct of a lineup, absent an intelligent waiver. See *Gilbert* v. *California,* 388 U. S. 263. In *Commonwealth* v. *Cooper,* 356 Mass. 74, 83,[3] this court stated, "Once the right to counsel arises in connection with an identification procedure the person in custody must specifically and seasonably be informed of that right before the procedure commences. As under the *Miranda* rule, the right to counsel may be waived, provided it is intelligently and understandingly done." We then ruled that before the observation and confrontation Cooper "was entitled to be informed of that prospect and of his right to have counsel present. The earlier warnings to Cooper under the *Miranda* case did not encompass the information contemplated under the *Wade* case." In the *Cooper* case the error was that the defendant, although he had been given the *Miranda* warning that he had a right to have a lawyer with him during inter-

---

[3] In *Cooper* v. *Picard,* 428 F. 2d 1351 (1st Cir.), the court said that we were incorrect in the *Cooper* case in stating (356 Mass. at 83–84) that "Cooper does not attribute any unfairness to the procedure resulting in his identification. . . ." Cooper was held entitled to an evidentiary hearing on whether in-court identifications were tainted by the erroneous out-of-court identifications. On remand, in *Cooper* v. *Picard,* 316 F. Supp. 856 (D. Mass.), Cooper was discharged.

rogation, had not been told that he also had a right to the aid of counsel during an identification procedure.

In the present case explicit warning was given to the defendant that before being placed in the lineup he had a right to a lawyer. The error claimed in the present case is that it was not made clear that if the defendant could not afford an attorney one would be appointed for him. The Commonwealth argues that the precise point had been made in the *Miranda* warnings given shortly before, and that therefore the judge was warranted in finding that it was sufficiently incorporated in the *Wade* warning without explicit repetition. Moreover, the defendant stated explicitly that he wished to waive the right to have an attorney present at the lineup. Assuming without deciding that the complete *Wade* warning was not given the defendant before the lineup identification, we need not reverse the defendant's conviction. A confederate and the girl victim both identified the defendant in court, and their identifications were not tainted by the lineup. Moreover, the defendant identified himself as a participant in the incident by his own testimony. The evidence is clear beyond a reasonable doubt that any error in the lineup procedure did not affect the ultimate verdict. See *Chapman* v. *California,* 386 U. S. 18, 24. See also *Commonwealth* v. *Howard,* 355 Mass. 526, 530.

*Judgments affirmed.*