COMMONWEALTH *vs.* EVERETT MENDES.

Bristol. September 13, 1971. — April 3, 1972.

Present: TAURO, C.J., CUTTER, REARDON, BRAUCHER, & HENNESSEY, JJ.

*Identification. Constitutional Law,* Assistance of counsel. *Practice, Criminal,* Assistance of counsel. *Search and Seizure. Evidence,* Firearm, Other offence.

Where the defendant in an armed robbery case was placed in a lineup by police without being advised by them of his right to have counsel at the lineup, the lineup, conducted in the absence of counsel, was illegal and identification of the defendant as the robber at the lineup, admitted in evidence at the defendant's trial, should have been excluded since the defendant could not have made a knowing and intelligent waiver of his right to counsel at the lineup in the circumstances [509–510]; and since the admission in evidence of the identification at the lineup could not be viewed as harmless error beyond a reasonable doubt, the defendant was entitled to a new trial [510].

An illegal lineup identification does not necessarily preclude the same witness from making a valid in-court identification where the prosecution establishes by clear and convincing evidence that the in-court identification was independent of and not tainted by the illegal lineup identification, but the trial judge must make complete and detailed findings to support that conclusion if he admits the in-court identification. [510–512]

At the trial of an indictment for armed robbery, the judge properly admitted in evidence some of the defendant's clothing which was taken from his sister's home by the police without a warrant where the prosecution satisfied its burden of proving that the sister had voluntarily consented to the search and willingly secured her brother's clothing for the police from a closet of which the sister had equal control. [512–514]

At the trial of an indictment for armed robbery wherein the robber used a gun to rob a liquor store, it was not error for the trial judge

to admit in evidence a gun that had been seized by the police from under the front seat of a car in which the defendant was seated in the rear when arrested in connection with a different crime, where the gun answered a description of the gun used in the liquor store robbery; whether the defendant was in possession of the gun found in the car was a question for the jury. [514–515]

A police officer's testimony at a trial for armed robbery, that a gun which was found in an automobile occupied by the defendant and which was admitted in evidence, had been traced to an out of State burglary, should not have been admitted since it served to inform the jury that the defendant may have been involved in some prior criminal activity. [515]

INDICTMENT found and returned in the Superior Court on November 5, 1970.

A motion to suppress was heard by *Smith,* J., and the case was tried before him.

*Reuben Goodman* for the defendant.

*Paul J. McCawley,* Assistant District Attorney (*Philip A. Rollins,* District Attorney, with him) for the Commonwealth.

TAURO, C.J.   The defendant Everett Mendes appeals under G. L. c. 278, §§ 33A–33G, from a conviction on an indictment for armed robbery.

The defendant assigns as error (1) the failure to suppress evidence of the defendant's identification at a line-up; (2) the failure to suppress his in-court identification; (3) the failure to suppress his clothing and related testimony; (4) the failure to suppress a gun found in an automobile in which he was riding at the time of his arrest for an unrelated offence; and (5) the denial of his motion for a mistrial on the wrongful admission in evidence of the gun and on the wrongful admission of evidence of irrelevant matters and other crimes.

The evidence pertinent to these issues is as follows.   On June 30, 1970, at approximately eight o'clock in the evening, a man entered the F & A Liquor Store in Fall River and asked the owner, William A. Ryding, for a package of cigarettes.   As Ryding was ringing up the sale, the man displayed a pistol and demanded the money in the

register. Ryding gave him approximately $41 and was then ordered into the back room. The store was well lighted. Ryding was able to observe the robber for a period of approximately two minutes and shortly afterward described him to the police as a tall white man, with dark hair and wearing dark glasses, a tan sweater and tan pants.

On July 4, 1970, Ryding viewed "mug shots" at the police station but was unable to make an identification. No evidence was introduced on whether the defendant's picture was included. On July 30, Ryding, at the request of Lieutenant Campos, went to the Fall River police station where the lieutenant told him, "I think we have the man that held you up." Ryding was then escorted into a room where eight men, including the defendant, were standing. After being asked to look the lineup over "carefully," although at first indicating some uncertainty, Ryding identified the defendant as the robber. The next day Ryding again visited the police station where he identified certain items of clothing, which had been taken from the defendant's sister's home, as those worn by the robber.

1. The defendant argues that the trial judge's failure to suppress evidence of the lineup identification in the absence of counsel was constitutional error. Lieutenant Campos previously had given Mendes the *Miranda* warnings. However, these " 'did not encompass the information contemplated under' *United States* v. *Wade*, 388 U. S. 218." [1] *Commonwealth* v. *Guillory*, 356 Mass. 591, 593. See *Commonwealth* v. *Cooper*, 356 Mass. 74, 83. Compare *Commonwealth* v. *Preston*, 359 Mass. 368, 373. The police, contrary to well established law which we are

---

[1] Lieutenant Campos testified that after being informed of his *Miranda* rights the defendant said, "I know all about that. I understand them"; that he told the defendant that he had been identified as the man involved in the robbery; and that the defendant replied, "Bring the guy in before me. Let him say that before me." Lieutenant Campos, however, admitted that, although the defendant had been given the *Miranda* warnings, he was not specifically informed of his right to counsel *at the lineup*.

required to apply, did not inform the defendant of his right to counsel *at the lineup,* and in these circumstances the defendant could not make a knowing and intelligent waiver of his *Wade* rights. *Commonwealth* v. *Cooper, supra,* at 83.[2] See *Commonwealth* v. *Preston, supra,* at 373. Cf. *Miranda* v. *Arizona,* 384 U. S. 436, 475, citing *Johnson* v. *Zerbst,* 304 U. S. 458, 464. We conclude therefore that the lineup was illegal and that the lineup identification should have been excluded. *Gilbert* v. *California,* 388 U. S. 263, 272–274. Since the present record discloses no circumstance which would warrant "a belief that it [evidence of the lineup identification] was harmless beyond a reasonable doubt" (*Gilbert* v. *California,* 388 U. S. 263, 274, citing *Chapman* v. *California,* 386 U. S. 18, 24; see *United States* v. *Wade,* 388 U. S. 218, 242),[3] this court must reverse the judgment of the Superior Court.

It is assumed that, in the event of a new trial, evidence of the illegal lineup identification will be excluded. Since there may be a new trial, we will now consider the defendant's other contentions.

2. We turn first to the defendant's contention that his in-court identification by Ryding was inadmissible on the

---

[2] In the *Cooper* case, although we ruled that, in the absence of a proper warning, the defendant had not effectively waived his right to have counsel present at a pre-trial lineup, the judgment was affirmed on the basis (at 84–85) that the Commonwealth had established, by clear and convincing evidence, the independence of the in-court identifications introduced against the defendant. Following our *Cooper* decision, a petition for habeas corpus was filed in the United States District Court for the District of Massachusetts. That court denied the petition without hearing, but the Court of Appeals for the First Circuit reversed and remanded. *Cooper* v. *Picard,* 428 F. 2d 1351. The court held that Cooper was entitled to an evidentiary hearing on whether the in-court identifications were tainted by the prior illegal lineup. At 1354. On remand, in *Cooper* v. *Picard,* 316 F. Supp. 856 (D. Mass.), Cooper was discharged.

[3] The circumstances disclosed in the record, in fact, point to an opposite conclusion. At trial the victim made specific reference to his lineup identification. Q. (to the victim) "You still picked out which man?" A. "The fourth man from the right." Q. "Do you see that man in the Courtroom here today?" A. "Yes, I do." COUNSEL FOR THE DEFENDANT: "I object." Q. "Where is he?" COUNSEL FOR THE DEFENDANT: "I object." A. "He is the man sitting down in the box." COUNSEL FOR THE DEFENDANT: "May that go out, your Honor?" The judge: "No; it may stand." COUNSEL FOR THE DEFENDANT: "My objection and exception."

ground that it was tainted by the prior illegal lineup identification procedure. It is well settled, however, that the mere fact that an illegal identification has occurred (but been suppressed as evidence at the trial) does not necessarily preclude the same witnesses from making valid in-court identifications. Indeed, the witness may identify the defendant at trial, provided that the Commonwealth establishes "by clear and convincing evidence that the in-court identifications . . . [are] based upon observations of the suspect other than the lineup identification." *United States* v. *Wade*, 388 U. S. 218, 240. See *Commonwealth* v. *Robinson*, 355 Mass. 620, 621–622; *Commonwealth* v. *Cooper*, 356 Mass. 74, 84; *Commonwealth* v. *Tempesta*, *ante*, 191, 195; *Commonwealth* v. *McGrath*, *ante*, 431, 437–438.

The original record in this case was not satisfactory as to this issue.[4] In the event of a new trial, complete and detailed findings by the trial judge are required to support a conclusion that the in-court identification was independent of and not tainted by the illegal lineup identification. "Wade listed six inquiries. (1) The extent of the witness' opportunity to observe the defendant at the time of the crime; prior errors, if any, (2) in description, (3) in identifying another person or (4) in failing to identify the defendant; (5) the receipt of other suggestions, and (6) the lapse of time between the crime and the identification. The first factor seems the most important. Clearly the firmer the contemporaneous impression, the less is the witness subject to be influenced by subsequent events." *Allen* v. *Moore*, 453 F. 2d 970, 975 (1st Cir.). See *United States* v. *Wade*, *supra*, at 241. Because of the dangers inherent in subsequent suggestions (see *Stovall* v. *Denno*, 388 U. S. 293), however, the judge

---

[4] The case was remanded to the trial judge for further detailed findings. Although the judge concluded that the admission in evidence at the trial of the illegal lineup identification was harmless beyond a reasonable doubt, his subsidiary findings do not support his conclusion. For an example of appropriate findings, see findings of the trial judge reported in *Commonwealth* v. *Tempesta*, *ante*, at 193–194.

should in any event hear evidence upon, and take into account in his conclusion, what influence, if any, the illegal pre-trial confrontation between the witness and the defendant has had upon the witness's prior recollection of the defendant from the time of the crime. *Cooper* v. *Picard*, 428 F. 2d 1351 (1st Cir.), *S. C.* 316 F. Supp. 856, 859 (D. Mass.). See *Commonwealth* v. *McGrath, ante,* 431, 436–437.

3. The defendant argues that the admission in evidence of his clothing taken from his sister's home was error. The defendant's sister testified at a voir dire hearing that, while at the police station, she answered in the affirmative to a question on whether the defendant had any clothes at her home, and that Lieutenant Campos said, "Well, I can get a search warrant to get them, you know. . . . Otherwise you can just give them to me" and that she replied, "You don't need no search warrant. . . . It's not necessary." She then gave her consent in writing [5] and was driven to her home by a police officer. The defendant's clothes were packed into a suitcase by the defendant's sister and they returned to the police station where Lieutenant Campos opened the suitcase and removed the tan sweater and trousers which were later identified by the victim and introduced in evidence over the defendant's objection. At the voir dire, the sister testified that she had acted voluntarily both in accompanying the police officer to her house and in delivering her brother's clothes to him.

Where there is a question of consent in a search and seizure, the test to be applied is stated in *Bumper* v. *North Carolina*, 391 U. S. 543, 548: "When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." See *Commonwealth* v.

---

[5] "I Isabel Sadler hereby give permission for police officers to enter my home without a warrant to seize the personal property of my brother Everett Mendes. I do this act freely and of my own will without any promises being made or threats of any kind. Signed Isabel Sadler."

*Campbell,* 352 Mass. 387, 401; *Amos* v. *United States,*
255 U. S. 313, 317; *Judd* v. *United States,* 190 F. 2d 649
(D. C. Cir.). Here, the defendant was a guest in his
sister's home while he was on vacation from California.
On the record before us, it clearly appears that the sister
acted voluntarily in securing her brother's clothing from
the closet for the police. See *Coolidge* v. *New Hampshire,*
403 U. S. 443, 487–490. *Commonwealth* v. *Martin,* 358
Mass. 282, 285. *Commonwealth* v. *Appleby,* 358 Mass.
407, 411. Furthermore, there was no evidence that the
closet in which the clothes were kept was for the exclusive
use of the defendant. Compare *United States* v. *Poole,*
307 F. Supp. 1185, 1187–1190 (E. D. La.) (where the
overnight bag searched belonged to the defendant and was
merely entrusted to another for storage).[6] We are sat-
isfied that the sister had at least equal control of the
closet. In the circumstances, she could properly consent
to the search of the closet and the seizure of the clothes.
See *Commonwealth* v. *Connolly,* 356 Mass. 617, 624 (con-
sent by cotenant of apartment building to search of com-
mon basement).[7] We conclude therefore that there was

---

[6] In *United States* v. *Poole,* where consent was held ineffective,
the court said at 1189: "[A] defendant may object to a search con-
sented to by another where the defendant has exclusive control over
a part of the premises searched or over an 'effect' on the premises
which is itself capable of being (and is) 'searched.' 'Enclosed spaces'
over which a non-consenting party has a right to exclude others,
whether rooms or effects, are protected." Other cases in which con-
sent was not effective are: *United States* v. *Blok,* 188 F. 2d 1019
(D. C. Cir.). *Holzhey* v. *United States,* 223 F. 2d 823 (5th Cir.).
*Reeves* v. *Warden, Md. Penitentiary,* 346 F. 2d 915 (4th Cir.). *Cun-
ningham* v. *Heinze,* 352 F. 2d 1 (9th Cir.), cert. den. sub nom.
*Heinze* v. *Cunningham,* 383 U. S. 968. *People* v. *Egan,* 250 Cal. App.
2d 433. Consent was effective, however, in these cases: *Cutting* v.
*United States,* 169 F. 2d 951 (9th Cir.). *Calhoun* v. *United States,*
172 F. 2d 457 (5th Cir.), cert. den. 337 U. S. 938. *Rees* v. *Peyton,*
341 F. 2d 859 (4th Cir.). *United States* v. *White,* 268 F. Supp. 998
(D. D. C.). In *United States* v. *White, supra,* at 1002, the court said:
"[There was no] consent to search areas exclusively used by or
specifically set aside for the use of the defendant . . . [or] consent
[given] to enter and search his secured personal effects."

[7] See also *Frazier* v. *Cupp,* 394 U. S. 731, 740 (consent by joint
owner of a duffel bag); *United States* v. *Sferas,* 210 F. 2d 69, 74 (7th
Cir.), cert. den. sub nom. *Skally* v. *United States,* 347 U. S. 935
(consent by brother-partner); *Teasley* v. *United States,* 292 F. 2d
460, 464 (9th Cir.) (consent by co-occupant of apartment); *Drum-*

no error in the judge's ruling admitting the clothes in evidence.

4. The final issue pertains to the admission of the gun in evidence and the testimony in reference thereto. The defendant argues that testimony by the police that the gun was traced to a burglary in California was highly prejudicial and called for a mistrial or at least that the evidence should have been struck. The gun was seized by the police from under the front seat of the car in which the defendant was seated in the rear at the time of his arrest in connection with a local bank robbery. At the trial, over the defendant's objection and exception, Lieutenant Campos testified to a conversation he had with the defendant concerning the gun. "I asked him if it was his gun. And he said he never saw it before in his life." He further testified, "I told him that we had traced that gun, and it was taken in a burglary in California. He said he knew nothing about it." The court denied the defendant's motion to strike this testimony stating that "[defendant] denied the ownership." In his charge to the jury, the judge referred to the gun, stating: "No one identifies . . . [the defendant] as the owner of the pistol; nor is it shown that — he says he didn't know it was there, as I remember. But, none-the-less, it was there."

The general rule as to the admission of the gun was stated in *Commonwealth* v. *McLaughlin,* 352 Mass. 218, 229–230: "Weapons found in the possession of a defendant at the time of his arrest are commonly held to be admissible if they might have been used in the commission of the crime charged, even though there is no direct proof that the weapons were in fact those used." The issue, therefore, with respect to the admissibility of the gun is whether it might have been used in the commission of this armed robbery. Ryding described the weapon as a "large brown gun." The gun answered that description, and,

---

*mond* v. *United States,* 350 F. 2d 983, 989–990 (8th Cir.) (consent by accomplice); *People* v. *Gorg,* 45 Cal. 2d 776, 783 (consent by home owner).

therefore, was properly admitted in evidence. The gun was found in an automobile occupied by the defendant when he was arrested, and whether it was under the control of the defendant presented a jury question. *Commonwealth* v. *Retkovitz*, 222 Mass. 245, 249.

The police officer's statement that the gun was taken in a burglary in California served to inform the jury that the defendant may have been involved in some prior criminal activity. Although the judge's specific instructions to the jury on this evidence probably made its admission harmless, in the event of a new trial there should be no reference to the California burglary. *Commonwealth* v. *Stone*, 321 Mass. 471, 472–473. *Commonwealth* v. *Welcome*, 348 Mass. 68. *Commonwealth* v. *Vanetzian*, 350 Mass. 491, 495.

> *Judgment reversed.*
> *Verdict set aside.*