Kottmyer, J.
INTRODUCTION
The defendant, Frank Sardone, has moved to suppress evidence seized from 42 Maple Street, Lynn, Massachusetts, in the course of a search conducted pursuant to consent provided by his mother, the owner and a resident of the premises. An evidentiary hearing was held on January 26, 28 and February 9, 1999. For the reasons stated herein, the motion to suppress is ALLOWED in part and DENIED in part.
FINDINGS OF FACT
On December 12, 1997, Massachusetts State Police officers Thomas Coffey, Thomas Greeley and William Donoghue were investigating the defendant, among others, for narcotics violations. Earlier that day, a cooperating individual, Robert lorio, had arranged via telephone conversation with the defendant for the delivery of narcotics to a house in Revere. During the conversation, the defendant had suggested his mother’s house at 42 Maple Street and his grandmother’s house, which was also in Lynn, as alternate sites for the delivery. The officers directed lorio to reject these suggestions for security reasons. The drugs were delivered to Iorio’s house in Revere by William Saccone who was promptly arrested. Saccone told Trooper Thomas Coffey that he last saw the defendant at Saccone’s house in Peabody. The officers left Revere and drove to Saccone’s house in Peabody to arrest the defendant, but did not find him there, They then went to the defendant’s mother’s house at 42 Maple Street in Lynn. When they arrived, the officers observed an individual later identified as Derek Sardone (the defendant’s brother) look out of a window on the second floor from what proved to be the defendant’s room. Derek Sardone had gone into the room to turn on a stereo, which he discovered was not hooked up. The defendant, who is in his mid-twenties, sometimes stayed with his father in Newburyport and frequently stayed at his mother’s house at 42 Maple Street in Lynn, where a bedroom was designated as belonging to him. His mother and brother had free access to the bedroom.
Coffey and Greeley went to the front door. Derek Sardone, who is 19 years old, admitted them to the house after unlocking the door. Derek had just arrived home and was preparing to go out for the evening. The officers identified themselves and asked Derek if his brother was home, explaining that they were there to arrest him. Coffey initiated a pat frisk. Derek said that his brother was not at home and gave the officers permission to check the house, telling them which room his brother occupied. Although Derek was generally mistrustful of police officers, he knew his brother was not in the house and had no reason to refuse to let the officers look around. Coffey and Donoghue, who had also entered the house, went up to the room which Derek had stated belonged to the defendant, with guns drawn. Greeley remained in the foyer with Derek Sardone. In the defendant’s room, Coffey and Donoghue observed on top of a bureau two bongs (one 18" in height) which they recognized as utensils used to ingest drugs, principally marijuana. The officers did not find the defendant anywhere in the house. Coffey told Greeley about the bongs he had observed. After Greeley consulted by telephone with Assistant Attorney General Robert Sikellis, he decided to apply for a search warrant for the house and called for reinforcements to secure the premises while the three officers who were present went to prepare the paperwork for a search warrant.
Troopers Jaime Cepero and Jack Henley arrived at 42 Maple Street at about 7:50 p.m. Derek Sardone wanted to take a shower and Cepero accompanied him upstairs. Jean Sardone, mother of Derek and the defendant, arrived home at about 8:15 p.m., at about the same time as Derek Sardone finished showering.
Henley identified himself to Jean Sardone and explained that they were looking for the defendant to arrest him for narcotics violations. Cepero and Derek came downstairs within minutes of Ms. Sardone’s arrival. Cepero explained that other officers had gone into Boston to obtain a search warrant which would take some time. He ascertained that she was the owner of the house and that she lived there. He told her she could, but did not have to, consent to the search. She said she didn’t know what to do and asked if she could make telephone calls. When told that she could, she called her ex-husband, her son’s father, and explained the situation to him. She also called a friend and spoke with him about the situation. After speaking on the telephone, Ms. Sardone told Cepero she would consent to the search.
Cepero, using paper provided by Ms. Sardone, drafted a consent to search. He consulted with Sergeant Greeley and Assistant A.G. Robert Sikellis via telephone as to the wording. Cepero read the consent to Ms. Sardone and explained it. Ms. Sardone read and signed the consent at 8:45 p.m. Ms. Sardone was *98 nervous and upset at the time she signed the consent. She was also concerned that new kitchen cabinets and appliances which had been delivered to her home, but not yet installed, would be damaged in the execution of a search warrant. She knew that she could refuse to consent to the search. The consent stated that if she did not consent, the police “would otherwise be required to seek and obtain a search warrant.”
During the search, quantities of cocaine and crystal methamphetamine were recovered in Tupperware in a knapsack which had been at least partially under the foot of the defendant’s bed. The knapsack had several zippers. At least some of the zippers were closed. The record is unclear whether the zipper at the opening to the compartment of the knapsack which contained the drugs was closed. The record clearly establishes that the opening was closed and the Tupperware and drugs were not visible until after the officer opened the knapsack. Police officers had not opened the knapsack before obtaining Ms. Sardone’s consent to search the house. Ms. Sardone was observing the search from the door of the bedroom at the time the drugs were recovered. When she saw the Tupperware, she said words to the effect, “That’s my Tupperware. I didn’t know Frank had it.”
RULINGS OF LAW
The defendant argues that the evidence must be suppressed on the grounds that Ms. Sardone’s consent was not voluntary. The Fourth Amendment to the United States Constitution and art. 14 of the Declaration of Rights of the Massachusetts Constitution prohibit warrantless searches and seizures in a person’s home, absent exigent circumstances or consent. Commonwealth v. Sanna, 424 Mass. 92, 96 (1997) (internal citations and quotations omitted). When police rely on consent, the Commonwealth must show “consent unfettered by coercion, express or implied, and also something more than mere acquiescence to a claim of lawful authority.” Id. at 97. The voluntariness of an individual’s consent is a question of fact to be determined in the circumstances of each case. Id.
In this case, the police advised Ms. Sardone of her right not to consent to the search. She was not under arrest and neither were her sons. Her testimony revealed that she is an intelligent woman who understood that she did not have to consent. Before consenting, she made several telephone calls and discussed the situation with her ex-husband and a friend. After making these calls, she signed a handwritten form expressly authorizing the search. Although she was understandably nervous and was concerned about her son and her property, the police did not coerce or intimidate her in any way. The Commonwealth has proven that Ms. Sardone knowingly and voluntarily consented to the search.
The Court must also decide whether Ms. Sardone had authority to consent to the search. The law allows a warrantless search when consent is given by a person with common authority over the premises or property to be searched. United States v. Matlock, 415 U.S. 164, 170 (1974).
The authority which justifies the third party consent does not rest upon the law of property . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that [the third party] has the right to permit the inspection in his own right and that the others have assumed the risk that [the third party] might permit the common area to be searched.
Id. at n.7 (internal citations omitted).
Under Matlock, the defendant’s reasonable expectation of privacy is diminished when he allows a third party joint access to the locus of the search. United States v. Block, 590 F.2d 535, 540, n.5 (4th Cir. 1978). The third-party consent does not vicariously waive the defendant’s Fourth Amendment rights. Id. Persons with joint access to a particular locus share “the power to surrender each other’s privacy to a third person.” United States v. Karo, 468 U.S. 705, 726 (1984) (O’Connor, J., concurring). “Persons who share access to closed containers also share the power to consent to a search ...” Id. Thus, where a defendant jointly uses a duffel bag with a third person, the third person possesses the authority to consent to its search. Frazier v. Cupp, 394 U.S. 731, 740(1969).
The government bears the burden of proving the effectiveness of a third party’s consent. United States v. Salinas-Cano, 959 F.2d 861, 864 (10th Cir. 1992) (citing Illinois v. Rodriguez, 497 U.S. 177 (1990)). To meet this burden, the government must introduce evidence of joint access or control over the object of the search. United States v. Salinas-Cano, 959 F.2d at 864.
In this case, the Commonwealth has met its burden as to the search of the defendant’s room. Ms. Sardone is the owner of 42 Maple Street, an occupant of the house and the defendant’s parent. The defendant did not pay rent. The bedroom door was not locked and the defendant’s mother and brother had free access to the room. Based on these factors, the Court concludes that Ms. Sardone shared control over the defendant’s room and that her consent to search it was valid. See Commonwealth v. Ortiz, 422 Mass. 64, 70 (1996).[1]
The issue next presented is whether Ms. Sardone’s consent was valid as to the search of the knapsack. There are no reported cases in Massachusetts directly addressing the question whether consent to search a general area extends to containers within that area, such as the knapsack in this case. In Commonwealth v. Mendes, 361 Mass. 507 (1972), the Supreme Judicial Court alluded to, but did not address, this issue. In Mendes, the defendant was a guest in his sister’s home. Id. at 512. The sister volunteered to and did retrieve the defendant’s clothes from a closet in the room where he was staying. Id. The Mendes Court *99 upheld the search, reasoning that the sister had “at least equal control of the closet.” Id. at 513.
In so holding, the Mendes Court distinguished United States v. Poole, 307 F.Sup. 1185 (E.D. La. 1969). Poole stands for the proposition that “a defendant may object to a search consented to by another where the defendant has exclusive control over a part of the premises searched or over an effect on the premises which is itself capable of being (and is) searched. Enclosed spaces over which a nonconsent-ing party has a right to exclude others, whether rooms or effects, are protected.” Id. at 1189.[2] Accord United States v. Welch, 4 F.3d 761, 764 (9th Cir. 1993); United States v. Salinas-Cano, 959 F.2d at 864-66; United States v. Block, 590 F.2d at 541-42; United States v. Dim, 569 F.2d 1264, 1265 (3d Cir. 1997). See also United States v. Karo, supra, 468 U.S. at 726 (O’Connor, J. concurring).[3]
Whether Ms. Sardone’s authority to consent to a search of the defendant’s bedroom encompassed the knapsack depends on several factors. First, certain types of containers historically command a high degree of privacy. Therefore, the type of container at issue is an important consideration. United States v. Salinas-Cano, 959 F.2d at 864. Valises, suitcases, footlockers, strong boxes, purses and overnight bags fall within a category of items where a high degree of privacy is expected. United States v. Welch, 4 F.3d at 765; United States v. Block, 590 F.2d at 541. On the other hand, boxes and plastic buckets are not the type of containers typically used to preserve privacy. United States v. Sealey, 830 F.2d 1028, 1031 (9th Cir. 1987). Here, the defendant’s knapsack falls within the former category, as an item that presumptively commands a high expectation of privacy. State v. Edwards, 570 A.2d 193, 202 (1990).
Another factor to be considered is whether the owner took precautions to manifest a subjective expectation of privacy. United States v. Salinas-Cano, 959 F.2d at 864. No efforts were taken to secure the knapsack although there was a safe in the room. But some, if not all, of the zippers and all of the openings to the knapsack were closed, so that its contents were not visible. The knapsack was at least partially under the foot of the bed in an area not visible from the door. The fact that the knapsack was not secured by a lock, while a relevant factor, is not determinative. See State v. Edwards, 570 A.2d at 202.
Additionally, the apparent nature of the consenting parly’s interest or lack of interest in the item searched is a relevant factor. United States v. Salinas-Cano, 959 F.2d at 846. For example, courts consider whether the third party explicitly disclaimed ownership and whether the defendant was present, but did not claim ownership. Id. Here, the defendant was not present when the search took place. Ms. Sardone was not asked and did not comment one way or the other as to ownership of and control over the knapsack. The record is devoid of evidence that Ms. Sardone or anyone else shared access to or control over the knapsack. See United States v. Salinas-Cano, supra, 959 F.2d at 865.
A number of courts have suggested that a parent-child relationship between the person giving consent and the target of the search is an important factor in determining the validity of consent. See Lafave, Search and Seizure §8.4(b). For example, in Vandenberg v. Superior Court, 87 Cal. Reptr. 876 (Cal.Ct.App. 1970), the court upheld a father’s authority to consent to search his minor son’s room.[4] The Vandenberg Court did not address the question whether a parent may consent to an area exclusively under the child’s control.[5] In most instances, parents either exercise control over the entire home, or have the right to exercise control over the entire home. This fact has a tendency to obfuscate whether authority to consent in such cases is based on status as a parent or control over the locus of the search. Cf. State v. Carsey, 664 P.2d 1085, 1092 (Ore. 1983).[6] The defendant in this case is an adult child who maintains a bedroom in his mother’s house and frequently stays there. Even where a parent of an adult child has the authority to consent to the search of a room, that authority does not extend to containers therein as to which there is a reasonable expectation of privacy, unless it is shown that the parent also had joint access to and control over the container. See, e.g., United States v. Block, 590 F.2d at 542; State v. Harris, 642 A.2d 1242, 1248 (Del. Super. Ct. 1993); State v. Pinegar, 583 S.W.2d 217, 220 (Mo.Ct.App. 1979).
After considering all the above factors, the Court concludes that the defendant had a reasonable expectation of privacy in the knapsack and that the Commonwealth has failed to satisfy its burden of proving that Ms. Sardone had authority to consent to the search of the knapsack. See State v. Harris, 642 A.2d at 1248 (defendant’s mother could consent to a search of his room, but not of a locked toolbox within the room); State v. Pinegar, 583 S.W.2d at 218-20 (defendant had protected expectation of privacy in unlocked footlocker in room he occasionálly used in parent’s home). State v. Edwards, 570 A.2d at 202 (lessee of apartment could consent to search of apartment, but not to search of defendant’s backpack).
The Commonwealth also failed to demonstrate that Ms. Sardone’s consent was effective on the basis of apparent authority. A third party has apparent authority to consent to the search of a container if the officers who conduct the search reasonably believe that the third party has actual authority to consent. United States v. Fultz, 146 F.3d 1102, 1105 (9th Cir. 1998). The doctrine of apparent authority is applicable only if the facts believed by the officers to be true would justify the search as a matter of law. United States v. Welch, 4 F.3d at 764. In this case, there are no facts from which the police could have reasonably believed *100 that Ms. Sardone possessed actual authority to authorize the search of the knapsack. See at 765.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendant’s Motion To Suppress is ALLOWED as to the evidence seized from the knapsack and DENIED in all other respects.

 In addition, I find that Derek Sardone had authority to consent to the officers’ initial entry into the defendant’s bedroom to search for him.

 “Obviously not every enclosed space within a room or other area, e.g., pockets in clothes, unsecured shoe boxes, and the like can claim independent status as objects capable of search not within the reach of the authorized area search. The rule has to be one of reason that assesses the critical circumstances indicating the presence or absence of a discrete expectation of privacy with respect to the particular object: whether it is secured, whether it is commonly used for preserving privacy, etc.” United States v. Block supra, 590 F.2d at n.8.

 The Mendes Court, also cited several cases upholding third-party consent searches. Commonwealth v. Mendes 361 Mass. at 513, n.6. These cases, however, are distinguishable from the instant case. In Cutting v. United States, 169 F.2d 951, 952 (9th Cir. 1948), the issue whether the defendant had exclusive control over the locus of the search was not addressed. In Calhoun v. United States, 172 F.2d 457, 457-58 (5th Cir. 1966), the court upheld consent to search a room which was neither in the possession of the defendant nor under his control. In Rees v. Peyton 341 F.2d 859, 862-63 (4th Cir. 1965), the court upheld a search where police obtained consent from the defendant’s parents to open a locked case found in their attic. The Rees court noted several factors that are not present in this case: (1) the defendant did not live in the house where the search took place, (2) when the consent was given there was no evidence that the defendant owned the case that was the subject of the search, (3) the case was hidden in a remote area of the house, (4) it was put there without the parent’s knowledge and, (5) it was marked as belonging to another individual, raising the specter that it was abandoned property. Id. In United States v. White, 269 F.Sup. 998, 1002 (D.D.C. 1966), the situation before the court “involve[d] neither consent to search areas exclusively used by or specifically set aside for the use of the defendant nor consent to enter and search his secured personal effects.”

 The Court stated:
In his capacity as the owner of the legal interest in the property a father can transfer to the police the limited right to enter and search the entire premises including that portion of the real property which has been designated by the parent for the use of his children ... in his capacity as the head of the household, a father has the responsibility and authority for the discipline, training and control of his children. In the exercise of his parental authority, a father has full access to the room set aside for his son for purposes of fulfilling his right and duty to control his son’s social behavior and to obtain obedience ... Permitting an officer to search a bedroom in order to determine if his son is using or trafficking in narcotics appears to us to be a reasonable and necessary extension of a father’s authority and control over his children’s moral training, health and personal hygiene. Id. at 880.

 The area searched was not a portion of the house set aside for the exclusive domain of the defendant and there was no evidence that the defendant had any right to possession regarding the locus of the search. Vandenberg v. Superior Court, 87 Cal. Rptr. at 879.

 In fact, courts that rely on parental status often are actually basing their decision on the parent’s superior or equal right to possession and control over the locus of the search. Lafave, supra, at §8.4(b) n.56. “In some instances the [parent-child] relationship maybe used to bolster a somewhat tenuous possession and control situation. For instance, a parent may not have actual possession, but his status as parent, coupled with an apparent right of control, may be enough to justify the consent.” Lafave, supra §8.4(b) at n. 56.