COMMONWEALTH *vs.* EDUARDO AYALA

No. 89-P-1155

Middlesex. October 4, 1990. - December 5, 1990.

Present: WARNER, C.J., FINE, & GILLERMAN, JJ.

*Constitutional Law*, Admissions and confessions. *Evidence*, Admissions and confessions. *Witness*, Police officer.

At a criminal trial it was error to admit in evidence certain statements made by the defendant to a police officer, where the police officer, in advising the defendant of his rights, had not only failed to warn that any statements made by the defendant could be used against him in court, but had invited the defendant to make a statement. [595-598]

INDICTMENT found and returned in the Superior Court Department on July 22, 1987.

The case was tried before *John Paul Sullivan*, J.

*Kevin Connelly* for the defendant.

*Judith B. Stephenson*, Special Assistant District Attorney (*James W. Sahakian*, Assistant District Attorney, with her) for the Commonwealth.

GILLERMAN, J. At the conclusion of a voir dire held during trial, a Superior Court judge ruled that a State trooper would be allowed to testify to incriminating statements made by the defendant in response to a custodial interrogation. Because that conclusion was of "constitutional proportions," *Commonwealth* v. *Moon*, 380 Mass. 751, 756 (1980), we may substitute our judgment for that of the trial judge, *ibid*.; *Commonwealth* v. *Haas*, 373 Mass. 545, 550 (1977), and we are constrained to do so. The defendant is entitled to a new trial.

Following a day of testimony on Friday, March 24, 1989, the jury began their deliberations. They did not reach their verdicts until the following Thursday, March 30, after nu-

merous questions to the judge and after reporting several times that they were unable to reach a verdict. In the end, the defendant, charged with having sexual intercourse by force with a child under sixteen years of age and with indecent assault and battery, was acquitted of the latter charge, but was found guilty on the former charge of the lesser included offense of sexual intercourse with a child under sixteen years of age, so-called statutory rape.

We need recite only the facts developed at the voir dire and at the trial which are relevant to the issue at hand. Trooper Cepero, born in Puerto Rico and fluent in Spanish, received a call, while on duty at Logan Airport barracks, to go to the parking lot of the Marriott food service area to meet two Metropolitan District Commission (MDC) police detectives. There, he saw the defendant in custody, seated in the rear of an MDC vehicle.

Prior to allowing Cepero to testify to the defendant's inculpatory statements, the judge held a voir dire. The trooper was asked by the police at the scene to recite the Miranda warnings to the defendant in Spanish and to explain to him why he was under arrest. When asked by the prosecutor whether in fact he gave the Miranda warnings, the trooper replied, "Yes I did, ma'am." The prosecutor then inquired, "And did you make inquiry of him?" He replied that he had. The trooper further said, "I asked him if he knows what the — I actually showed him the warrant [for the defendant's arrest] and asked him if he knew what the incident was about."

At that point, the judge interrupted and asked the trooper to "put on the record" the warnings the trooper actually gave the defendant. Speaking only from memory — just as he had apparently done at the time he gave the warnings to the defendant — the trooper recited the Miranda warnings he had delivered to the defendant. These included all the required warnings except that in place of the required warning that any statement the defendant made could be used against him, the trooper told the defendant "that if he wished to

make a statement he could do so . . . ."[1] The effect of the substitution was to invite the defendant to make a statement instead of warning him of the potentially adverse consequences of doing so.

At the conclusion of the direct examination of the trooper during the voir dire the judge asked, "Is there anything else relevant to the giving of rights . . . anything further with respect to laying the foundation?" The prosecutor said there was nothing further.

On cross-examination, the defendant's counsel established that the trooper had read the warrant to the defendant and that the defendant was seated in the cruiser, handcuffed, when he made the incriminating statements.

Following the voir dire testimony, the defendant's counsel argued that there had been no evidence of waiver[2] and that "under all the circumstances, the Commonwealth has not shown voluntariness beyond a reasonable doubt." She did not, however, bring to the judge's attention that the Miranda warnings given to the defendant were critically defective. The prosecutor was silent on the point as well, and it appears that the omission eluded everyone present.

The judge thereupon ruled:

> " In the whole context of these conversations, I find that the defendant's statements were made in a context in which I find they were made voluntarily and with full understanding of all of the rights that were given to him on the so-called Miranda card.[3] I will allow him to testify . . . ."

---

[1]The trooper's entire answer was, "I told him he had the right to remain silent, that if he wished to make a statement he could do so but he had the right to an attorney before any questioning, if he wished one. That if he could not afford an attorney one would be provided to him free of charge by the Commonwealth before any questioning. And I asked him if he understood those rights, and he stated, 'Yes.' "

[2]In view of our disposition of this case, the issue of waiver need not be considered.

[3]There was no evidence of the use of a Miranda card, and we take the judge's statement to be a figure of speech.

The trial resumed with the jury present. Now, on direct examination, the trooper testified that he "advised the defendant of his Miranda warnings," and that after asking the defendant whether he understood the reason for the arrest, the defendant said "that he understood and that he remembered the incident." The prosecutor asked whether the defendant said anything else. The trooper replied that the defendant did say more: "That the incident took place on the beach with his girlfriend, and that he never forced anybody." "Forced anybody to do what?" the prosecutor asked. The trooper answered, "To have sex with him." Then followed additional evidence of statements by the defendant in which, according to the trooper, the defendant said that "he didn't think anything would come of [the incident], and that's why he went to Puerto Rico and he was oblivious to anything until this time when he was arrested."

The Commonwealth claims that the voir dire established that there was no failure to give the required warnings — that an experienced[4] State trooper's conclusory testimony that he gave all the warnings required by *Miranda* v. *Arizona*, 384 U.S. 436 (1966), is a reliable and sufficient warranty that he did so. On this point the Commonwealth refers us to the passage in *Commonwealth* v. *Look*, 379 Mass. 893, 906 (1980), quoting from *Commonwealth* v. *Lewis*, 374 Mass. 203, 205 (1978), that "[n]o useful purpose is served by testing on the witness stand the officer's ability to recite accurately from memory the Miranda warnings. . . ."

It is true that on direct examination, early in the voir dire, the trooper testified in a conclusory fashion that he had recited the Miranda warnings to the defendant, but that statement must yield to his later inconsistent and more detailed testimony. In response to the judge's insistence that what the trooper said must be put "on the record," the trooper repeated the warnings he had actually given, and the record is clear not only that he omitted the warning that any statement can be used against the defendant but that the trooper

---

[4]The State trooper testified that he had served over four years in the State police.

invited the defendant to *make* a statement unaware, as the defendant then would be, that the statement could and would be used against him.

Moreover, after the trooper testified to the incomplete warning, the judge asked whether there was anything further "relevant to the giving of rights," and the prosecutor replied, "This is now his testimony." The subject of Miranda warnings, then, was left[5] with the trooper having testified to the unexplained omission of a required warning. It follows that the judge's finding that the defendant had a "full understanding of all the [Miranda] rights" is not supported by the record.

We emphasize that the quoted passage in *Look, supra* at 906, deprived of its context in *Lewis, supra* at 204-205, has been turned upside down by the Commonwealth. What the court wrote in *Lewis* was that it was wasteful to test the memory of the police on the witness stand when the proper police practice was simply to read the Miranda warnings from a card, give a copy of the card to the defendant, and place a copy of that card in evidence.[6] The failure of the police to follow a practice recommended by the Supreme Judicial Court since 1978 is part of the problem in this case. Memory may be too thin a reed upon which to hang compliance with the demands of the privilege against self-incrimination secured by the Fifth Amendment to the Federal Constitution.

---

[5]On cross-examination at the voir dire there were two references to the trooper having given the Miranda warnings without mention either by the trooper or defendant's counsel of the earlier omission. As noted above, the fact of the omission seems to have passed unnoticed; in any event the testimony on cross-examination did not cure the error apparent on direct examination.

[6]The entire passage in *Lewis, supra* at 204-205, reads as follows: "We commend the police practice followed in this case of reading the Miranda warnings from a card. We believe that much of the trial time now spent in trying to establish exactly what warning was given to a suspect or defendant could be saved if he were also given a copy of the card to be kept by him. We also approve the practice of admitting a police copy of the card in evidence. See *Commonwealth v. Preston*, 359 Mass. 368, 372 n.2 (1971). No useful purpose is served by testing on the witness stand the officer's ability to recite accurately from memory the Miranda warnings he read."

The Commonwealth relies principally on *Commonwealth v. Corriveau*, 396 Mass. 319 (1985), ignoring entirely that at page 329, note 3, the court points out that the transcript of the suppression hearing disclosed, contrary to the trial judge's memory, that in fact all the warnings had been given to the defendant. Given that fact, and the testimony of the captain of the local police force in that case corroborating earlier testimony that all the required warnings had been given to the defendant, there was no reason to reverse the conclusion of the trial judge denying the defendant's motion to suppress.

In sum, the Commonwealth refers us to no case, and we have found none, in which this court or the Supreme Judicial Court has held that it is harmless error to admit a statement given by a defendant while in custody and in response to an interrogation, where the police had not only omitted the warning that any statements could be used against the defendant, but invited the defendant to make a statement.

The defendant rightly argues that *Commonwealth v. Adams*, 389 Mass. 265 (1983), governs this case. There the court held that it was "clear error" to admit a statement in evidence where the police had violated the requirements of *Miranda* by omitting the same warning that was omitted here. *Id.* at 268. The court, at 269, quotes at length from *Miranda*, including the passage that the warning that statements can and will be used against the defendant "is an absolute prerequisite to interrogation." *Adams, supra* at 269, quoting from *Miranda, supra* at 471.

Once again,[7] the Supreme Judicial Court refers with approval to the quotation from *Coyote v. United States*, 380 F.2d 305, 309-310 (10th Cir.), cert. denied, 389 U.S. 992 (1967), that "if [the Miranda] prerequisites have not been fully met, the confession is without more involuntary as a matter of law, hence inadmissible and insubmissible." *Adams, supra* at 270.

---

[7]For an earlier occasion, see *Commonwealth v. Tavares*, 385 Mass. 140, 145, cert. denied, 457 U.S. 1137 (1982).

Thus, the case is one of the admission of a substantive statement by the defendant while in custody, about the particulars of a crime, contrast *Commonwealth* v. *Johnson*, 372 Mass. 185, 194 (1977), in response to a Miranda interrogation, *Rhode Island* v. *Innis*, 446 U.S. 291, 301 (1980), without the benefit of all the required Miranda warnings and over the objection of the defendant.[8] The defendant's statements were involuntary as matter of law and therefore were inadmissible. *Adams*, *supra* at 270.

The defendant is entitled to a new trial at which the statements may not be admitted in evidence.

In view of our disposition of this case, it is unnecessary to consider the claimed failure of the judge to instruct the jury on the voluntariness of the defendant's statements.

*Judgment reversed.*

*Verdict set aside.*

---

[8]At the voir dire, the defendant's counsel made known to the court the action she desired the court to take, and that is all that is required by Mass.R.Crim.P. 22, 378 Mass. 892 (1979). Because she had nothing new to offer at the trial, there was no need for her to renew her objection when the trial resumed before the jury. *Commonwealth* v. *Griffin*, 19 Mass. App. Ct. 174, 185 (1985). Her protest on the ground of voluntariness was broad enough to cover the failure to give all the required Miranda warnings. See *Commonwealth* v. *Tavares*, *supra* at 153 n.19.