## COMMONWEALTH *vs.* EUSTACIO D. ALCALA.

No. 00-P-941.

Worcester. October 17, 2001. - February 25, 2002.

Present: JACOBS, DREBEN, & GELINAS, JJ.

*Controlled Substances. Constitutional Law,* Admissions and confessions, Waiver of constitutional rights. *Evidence,* Admissions and confessions.

At the trial of an indictment charging a conspiracy to traffic in and trafficking in marijuana, evidence that the defendant and another participated in a plan to use a certain address merely as an interim point of delivery of packages containing marijuana, coupled with the defendant's "incredible" statement to the police concerning how he came to be present where the packages were delivered, supported an inference of guilty knowledge of the contents of the packages. [51-52]

This court concluded that, because a criminal defendant did not meet his burden of proving custodial interrogation at the time he made a statement to a State trooper, it was unnecessary to review the judge's conclusion that Miranda warnings had been given, and the court declined the defendant's invitation to revisit *Commonwealth* v. *Mitchell,* 47 Mass. App. Ct. 178, 181 (1999), and *Commonwealth* v. *Rendon-Alvarez,* 48 Mass. App. Ct. 140, 141 (1999), in the context of the decision of the Supreme Court reaffirming *Miranda* v. *Arizona,* 384 U.S. 436 (1966), in *Dickerson* v. *United States,* 530 U.S. 428, 444 (2000). [52-55]

INDICTMENTS found and returned in the Superior Court Department on December 10, 1998.

The cases were heard by *Francis R. Fecteau,* J.

*Wendy H. Sibbison* for the defendant.

*Christopher P. Hodgens,* Assistant District Attorney, for the Commonwealth.

JACOBS, J. The defendant appeals from his convictions, after a bench trial in the Superior Court, of conspiracy to traffic in marijuana, G. L. c. 94C, § 40, and trafficking in marijuana in an amount more than one hurdred and less than two thousand pounds, G. L. c. 94C, § 32E(ₓ)(2). We affirm.

*Factual background.* A Massachusetts State trooper, working undercover as a United Parcel Service (UPS) driver, delivered four large boxes with a return address in Phoenix, Arizona, to Prestige Auto Detailing (Prestige) in Leominster. A number of State, local, and Federal officers were nearby, and an anticipatory search warrant had been obtained as part of a controlled delivery.[1] The boxes contained a total of approximately 219 pounds of marijuana.

Just before the delivery, another officer saw a pickup truck, driven by the defendant, with a passenger, Alberto Camacho-Flores, approach the front of the Prestige building, and park facing the building. He observed both men go inside. When the UPS truck drove up, the defendant left the building, entered his truck, and drove away. After entering a bay doorway to the building, and announcing the delivery to two men inside, the trooper asked where he should put the boxes. Camacho-Flores asked the other man, Pablo Oquendo, and Oquendo indicated they should be placed inside, along a wall. Camacho-Flores subsequently went out to the UPS truck with the trooper and signed for the delivery. When the UPS truck left, the two men stacked the boxes outside the bay door.[2] The defendant returned in his truck ten to twenty minutes later and backed it toward the boxes. Camacho-Flores was standing in the doorway. Almost immediately after the truck stopped, Oquendo came from inside the building, the defendant climbed into the bed of the truck, and the three men began loading the boxes onto the truck. As the first box was placed on the truck the police officers approached. The defendant subsequently made a statement in response to questions put to him by one of the troopers. The essence of the statement, which was reduced to writing and signed by the defendant, is as follows: upon being called by a friend

---

[1]The boxes first came to the attention of local police at a UPS terminal in Louisville, Kentucky. Following a determination that the boxes contained marijuana, arrangements were made to fly them to Massachusetts State police who organized the controlled delivery.

[2]The officer who made these observations was nearby with a video camera and taped the delivery only up to this point because the camera's battery failed. The tape was viewed in court, and the officer provided some narrative, which is transcribed in the record. Our viewing of the tape indicates that it does not contain any significant information beyond what is reflected in the transcript.

and asked to pick up a man at the Town Crier Motel in West-minster, the defendant responded that he was busy that day. However, he agreed after his friend told him that he would be paid $200. The man the defendant met at the motel told him his name was Juan and indicated he had to go to the Prestige location to pick up packages. The defendant could not remember the name of the friend who called, claiming he was paged from far away, maybe California or Arizona. He did not know where he was to go with the packages, possibly back to the hotel.

*Sufficiency of the evidence.* Claiming that the Commonwealth failed to prove the knowledge element in both the conspiracy and the trafficking charges, the defendant argues that his motion for a required finding of not guilty should have been allowed at the close of the Commonwealth's case. He relies on *Commonwealth v. Aguiar,* 370 Mass. 490, 499 (1976), which states: "In the absence of other evidence, possession of an unopened package, containing drugs, addressed to another and received through the mail moments before his arrest, would not warrant an inference beyond a reasonable doubt that a defendant possessed the drugs knowingly." Here, however, the defendant was not merely the passive recipient of an unopened package. The appearance of the defendant and his passenger at Prestige, and their subsequent conduct, support a reasonable inference that they were expecting the UPS delivery. In driving away as the delivery was being made, and leaving Camacho-Flores behind, it reasonably may be inferred that the defendant sought to keep himself and his truck out of sight. Similarly, the boxes, signed for by Camacho-Flores, were placed inside until the UPS truck left. They then were moved outside, as if in anticipation of the defendant's return. When the defendant returned, his backing of his truck toward the boxes was further indication of a plan to take them away. That neither the defendant nor Camacho-Flores appear to have had any connection with Prestige, and their quick removal of the boxes from that business, unopened, support the inference that they participated in a plan to use that address merely as an interim point of delivery. This evidence, coupled with the defendant's "incredible" statement to the police concerning how he came to be present where the pack-

ages were delivered,[3] support an inference of guilty knowledge of the contents of the boxes. *Commonwealth* v. *Carrion,* 407 Mass. 263, 276 (1990) ("False statements made to the police are a standard example of admissible evidence on consciousness of guilt"). *Commonwealth* v. *LePore,* 40 Mass. App. Ct. 543, 549 (1996) ("Indeed, his implausible reason . . . could be read as evidence of consciousness of guilt").

*Admissibility of the statement.* Because the defendant's statement was relied upon by the Commonwealth in obtaining the defendant's conviction, we address his challenge to its admissibility. During direct examination of the trooper who took the statement, defense counsel asked the judge to determine if the defendant had been informed of his Miranda[4] rights, and whether the statement had been made voluntarily.[5] "When an objection is made at trial to the admission of a defendant's incriminating statement on the ground that it was obtained in violation of the *Miranda* case or was involuntary, or both, and no pretrial hearing has been held, the prudent thing for the judge to do is to stop the trial and conduct an appropriate inquiry." *Commonwealth* v. *Rubio,* 27 Mass. App. Ct. 506, 511 (1989). See *Commonwealth* v. *Woods,* 419 Mass. 366, 370 (1995). The judge properly did so in this case, permitting a separate inquiry at which the trooper who obtained the statement was examined both by counsel for the defendant and the prosecutor. The trooper testified that he read the defendant his rights "from a *Miranda* card," but that the trooper did not elaborate on the specific rights he read, nor was he asked to do so. The defendant's signed statement acknowledged that he had been advised of, and understood those rights. At the conclusion

---

[3]In announcing his decision, the judge stated he found the defendant's statement "incredible," and that the statement was evidence of consciousness of guilt or a "consciousness of the contents."

[4]*Miranda* v. *Arizona,* 384 U.S. 436 (1966).

[5]Ordinarily the admissibility of a statement is to be determined in a pretrial hearing. Here, the defendant had filed a motion to suppress, and a hearing had been held by another judge who denied the motion. However, the defendant's statement was not at issue in that hearing. Our record does not contain the memorandum filed by that judge, but we have a transcript of that hearing, which appears to have involved only the validity of search warrants issued in Kentucky and Massachusetts and issues related to police examination of the boxes.

of the hearing, the judge stated that, because no issue had been raised as to the many factors related to confinement or coercion, he would assume the defendant was in custody for the purpose of his decision. He concluded that he believed a "full recitation of [the defendant's] Miranda warnings [was] given"; that the defendant understood and voluntarily waived his rights; and that the statement, therefore, was admissible.

Contrary to assuming that the defendant was in custody when he was interrogated, as did the judge, we independently address the issue.[6] "Miranda warnings are only necessary where one is the subject of 'custody and official interrogation.' " *Commonwealth* v. *Larkin*, 429 Mass. 426, 432 (1999), quoting from *Illinois* v. *Perkins*, 496 U.S. 292, 297 (1990). "Whether a suspect was subject to custodial interrogation is a question of Federal constitutional law. [Citations omitted]. The defendant bears the burden of proving custody." *Commonwealth* v. *Larkin*, *supra*. "Once the defendant, who had the burden of going forward, had shown that the police had elicited statements from the defendant while he was in custody, there arose 'a heavy burden . . . on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to . . . counsel.' " *Commonwealth* v. *Howard*, 4 Mass. App. Ct. 476, 479 (1976), quoting from *Miranda* v. *Arizona*, 384 U.S. 436, 475 (1966).

In the separate hearing the defendant neither provided nor elicited any evidence that he was questioned in circumstances constituting coercion or custody. That failure of the defendant to meet his threshhold burden excused the Commonwealth from proving that Miranda warnings had been provided. Moreover, even if we take into account the evidence introduced at trial and outside of the hearing and view it in light of the established analytical framework, see *Commonwealth* v. *Bryant*, 390 Mass. 729, 737 (1984), we cannot say that sufficient evidence of

---

[6]The defendant asserts the Commonwealth's argument concerning custody is made for the first time on appeal. We disagree. Although the argument is brief, the prosecutor stated to the judge that "[t]here is nothing that indicates that the environment was a police setting, where there was a number of officers around who are armed, where the defendant was out of his element. . . . [N]othing that was said nor the conditions did anything to overbear this defendant's ability to exercise his rights. . . ."

custodial interrogation has been produced. Although some ten to fifteen local, State, and Federal police and other officers were in the general vicinity, and perhaps six or seven "converge[d]" on the three men at the building, no more than two officers were with the defendant when he was interrogated. There is no indication where the questioning took place, other than it occurred at the Prestige site, or how much time elapsed before the defendant signed a document setting forth the questions put to him and his responses. There is no evidence that the defendant was under arrest or was confined or handcuffed at the time of the interrogation or that the circumstances of the questioning were intimidating. The trooper testified that he spoke to the defendant in English, and had no problem understanding the defendant, who responded in English and was not reluctant to talk. The questions themselves, fairly read, are not accusatory or aggressive, and the defendant's answers generally were in brief narrative form. Compare *Commonwealth* v. *Borodine,* 371 Mass. 1, 4-5 (1976), cert. denied, 429 U.S. 1049 (1977).

Because we conclude the defendant did not meet his burden of showing custodial interrogation, we find it unnecessary to review the judge's conclusion that "a full recitation of [the] *Miranda* warnings were given." See *Commonwealth* v. *Bryant,* 390 Mass. 729, 742 & n.15 (1984). Also, in light of our decision, we decline the defendant's invitation to revisit *Commonwealth* v. *Mitchell,* 47 Mass. App. Ct. 178, 181 (1999), and *Commonwealth* v. *Rendon-Alvarez,* 48 Mass. App. Ct. 140, 141 (1999),[7] in the context of the recent decision of the Supreme Court reaffirming *Miranda* in *Dickerson* v. *United States,* 530

[7] The defendant concedes that under "comparable facts" in these two recent cases we have ruled that the failure to introduce the card was not fatal. See *Commonwealth* v. *Mitchell, supra* at 181 (inconsequential that during voir dire officer could not recall exact rights read to defendant in view of testimony that he read the rights from a Miranda card, and the defendant specifically indicated he understood his rights); *Commonwealth* v. *Rendon-Alvarez, supra* at 141 (not error for judge to conclude defendant was properly warned although officer could not recall all the warnings, where defendant had been given card to read at roadside and later warnings were read to defendant from such a card). See also *Commonwealth* v. *Preston,* 359 Mass. 368, 372 & n.2 (1971) (affirming judge's finding that Miranda warnings given based on officer's testimony and that defendant was shown a card). The present case is unlike *Commonwealth* v. *Ayala,* 29 Mass. App. Ct. 592, 598 (1990), and *Com-*

U.S. 428, 444 (2000). We do not read *Dickerson* as requiring a different result in our cases because "the Constitution does not require any specific code of procedures." *Commonwealth* v. *Larkin, supra* at 433, quoting from *Miranda* v. *Arizona,* 384 U.S. 436, 490-491 (1966).[8]

*Judgments affirmed.*

---

*monwealth* v. *Coplin,* 34 Mass. App. Ct. 478, 481-483 (1993), where one of the four warnings was omitted.

While it is good practice to introduce *Miranda* cards in evidence, see *Commonwealth* v. *Lewis,* 374 Mass. 203, 204-205 (1978), it has not been held, in the cases cited to us, that the failure to do so undermines a judicial finding, based on all the evidence, that Miranda warnings had been given. Such findings have support in the fact that "*Miranda* has become embedded in routine police practice to the point where the warnings have become part of our national culture." *Dickerson* v. *United States,* 530 U.S. 428, 444 (2000).

[8]The defendant, in additional arguments (raised for the first time in this appeal, and, therefore, not considered by us), notes that the rulings of *Mitchell* and *Rendon-Alvarez* did not consider the best evidence rule, complains that a police officer's testimony is incompetent evidence of what is actually on a Miranda card, and argues the best evidence rule as further justification for requiring the introduction of the card in evidence.