Budd, Kimberly S., J.
This action arises from the warrantless arrest and search of the defendant immediately following a controlled purchase of crack cocaine by an undercover officer of the Boston Police Department. Before the court is the defendant’s Motion to Suppress Evidence. For the reasons that follow, that motion will be denied.
FINDINGS OF FACT
I make the following findings of fact based upon the ■ credible evidence presented at the hearing and the reasonable inferences drawn from that evidence.
On June 3, 2009, Detective Greg Walsh, an experienced narcotics investigator of the Boston Police Department, was working undercover in the South End area of Boston near the Pine Street Inn. The Area D-4 Drug Control Unit had targeted the Pine Street Inn area for an investigation because they were aware that drug dealers often frequented the area in an attempt to sell crack to homeless individuals. At approximately 9:45 that evening, Walsh observed the defendant walking with a man who appeared to be homeless. The two went into an alleyway which runs between Harrison Avenue and Washington street and is bordered by 433 Harrison Avenue on one side and a chain link fence and parking lot on the other. The two exited the alleyway seconds after entering it. In his training and experience investigating narcotics crimes, Walsh believed that Rouse was selling drugs and attempting to secret the sale in the alleyway.
Soon after making this observation, Walsh approached the defendant, who was located at the Mobil gas station adjacent to the Pine Street Inn. Walsh asked him, “Is anyone around?” which is a common way for customers to let a drug dealer know that they are looking for drugs. Rouse responded, “Shake my hand.” When Walsh complied, Rouse said, “You got soft hands.” In his training and experience, Walsh knew that crack users often have rough, injured hands because the glass crack pipe can burn a user’s fingertips, and assumed that the defendant was testing him. He replied, ‘These are hands of a working man.” Rouse, satisfied with this response, told Walsh to follow him, and led him to the alleyway at 433 Harrison Avenue. On the way there, he asked Walsh if he was a cop or a snitch and Walsh replied that he was not. They stopped in the middle of the alleyway, and the defendant asked how much Walsh wanted. Walsh replied that he had $60 to spend. He then observed the defendant cup one hand and appear to manipulate items in his palm with the other hand, and then hand Walsh what appeared to be pieces of crack cocaine. Surveillance officers were able to witness the transaction from their positions through the chain link fence. Walsh thanked the defendant and the two parted ways. Walsh headed back towards Harrison Avenue, and Rouse headed in the opposite direction in the alleyway, towards Washington Street.
Walsh gave a signal indicating that the transaction was complete, and Sergeant Detective Fitzpatrick radioed a description of Rouse to other police officers involved in the investigation. Officers Richard Casallas and Kevin McElmoyle, stationed on Washington Street, attempted to intercept Rouse as he exited the alleyway. As they began walking toward him and announced themselves as police officers, the defendant ran inbound on Washington Street towards East Berkley Street. Casallas and McElmoyle gave chase on foot, announcing their office and ordering him to stop several times. McElmoyle was nearly hit by a car as he chased the defendant across Washington Street. Mc-Elmoyle caught up with the defendant on the comer of Washington and East Berkley and tackled him to the ground. He was joined seconds later by Casallas and the two struggled briefly to get Rouse to put his hands behind his back. The defendant and both officers sustained minor injuries.
Officer Stephen Green, who was familiar with Rouse from previous encounters and testified that the defendant has a record, informed Rouse of his Miranda rights from memoiy.[1] The defendant looked at Green and said he understood. He did not appear to be intoxicated or under the influence of narcotics. During the search incident to arrest, officers recovered the department-issued buy money, additional cash and two cell phones. Upon being told that he was under arrest for the sale of drugs, the defendant told Green that he had sold the “white guy with the army pants” four pieces of crack for sixty dollars.[2]
RULINGS OF LAW
1. The Stop and Warrantless Arrest
“Probable cause exists where . . . the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual . . . has committed or was committing *58 an offense.” Commonwealth v. Washington, 449 Mass. 476, 481 (2007), quoting Commonwealth v. Storey, 378 Mass. 312, 321 (1979). Walsh’s interactions with Rouse gave the officers probable cause to believe that the defendant had committed a crime. They were therefore justified in attempting to stop the defendant and effectuating an arrest.[3]
2. The Statements
I find that Rouse was properly advised of his Miranda rights before he made an inculpatory statement to Green. The better practice is for police use written Miranda warnings. See Commonwealth v. Dagraca, 447 Mass. 546, 551 n.7 (2006), citing Commonwealth v. Ayala, 29 Mass.App.Ct. 592, 596 (1990). However, where, as here, a police officer provides credible testimony establishing that he had properly advised a defendant of his Miranda rights, that testimony is sufficient to establish that the warnings were properly given.[4] See, e.g., Commonwealth v. Smith, 426 Mass. 76, 81 (1997), citing Commonwealth v. Corriveau, 396 Mass. 319, 330 (1985); Commonwealth v. Woodbine, Criminal Action No. 04-10365, 2006 WL 1704103 *1 (Suffolk Super.Ct. Mar. 28, 2006) (Fishman, J.).
The defendant, an English-speaking adult who has been arrested in the past, said that he understood his rights and did not appear to be under the influence of alcohol or narcotics. In addition, he was alert enough to test Walsh by asking him to shake hands, and to ask whether Walsh was a snitch or a cop. The defendant’s statements, following the Miranda warnings, were voluntary.
3. Bias
At the hearing the defendant suggested through argument that the police used excessive force in effectuating his arrest and that the witnesses’ credibility is at issue because of resulting bias that they have against him. There was no credible evidence of either excessive force or bias. The use of force by McElmoyle and Casallas was necessitated by the defendant’s flight and resistance to arrest. Each of the four witnesses, Walsh, Green, Casallas and McEmoyle, testified consistently with one another and credibly. The defendant’s argument is without merit.
ORDER
For the foregoing reasons, the defendant’s Motion to Suppress Evidence is, in all respects, DENIED.

At the evidentiary hearing related to the Motion to Suppress, Officer Green elaborated, testifying that he told the defendant, “Mr. Rouse ... you have the right to remain silent. Anything you say can be used against you in a court of law. You have a right to an attorney. If you can’t afford one, one will be appointed for you by the Commonwealth at no cost. You have the right to answer questions and at any time during questioning you can request that a lawyer be present and the questioning will stop ... Do you understand your rights? If there’s any part of your rights that you don’t understand, I will do them one by one and explain each one of them to you.” I credit Officer Green’s testimony that he properly advised the defendant of his Miranda rights.

Walsh wore army fatigues that night.

he defendant was seized in a constitutional sense when Officers Casallas and McElmoyle announced their office and ordered him to stop during the foot chase. “Pursuit by the police becomes a seizure when it ‘would communicate to the reasonable person an attempt to capture or otherwise intrude on [an individual’s] freedom of movement.’ ” Commonwealth v. Isaiah, 450 Mass. 818, 822 (2008), quoting Commonwealth v. Watson, 430 Mass. 725, 731 (2000).

Even if the defendant was not given his Mirandawarnings properly, his spontaneous statement to Officer Green would not be subject to suppression. See Commonwealth v. Braley, 449 Mass. 316, 323-24 (2007) (“For Miranda purposes, interrogation must reflect a measure of compulsion above and beyond that inherent in custody itself, and consists of express questioning or its functional equivalent”) (internal quotations omitted). Here, Officer Green did not prompt the defendant’s statement with questioning of any sort.